George A. DARNELL, Plaintiff–
Appellant,

v.

TARGET STORES, Defendant–Appellee.

No. 93–1061.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1993.

Decided Feb. 7, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied March 29, 1994.

Raymond J. Hafsten, Jr. (argued), Indianapolis, IN, for plaintiff-appellant.

Richard A. Smikle, Ice, Miller, Donadio & Ryan, Indianapolis, IN, Robert L. Grossman (argued), Grossman & Millard, Minneapolis, MN, for defendant-appellee.

Before ESCHBACH, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

George Darnell had a long career with his employer, "Target Stores," and its predecessor, "L.S. Ayres." He began working for L.S. Ayres in 1946, and by 1980 Darnell was a store manager for an Ayres discount spin off "Ayr–Way." In June of 1980 Darnell was demoted to assistant store manager. He no longer had responsibility for payroll, his pay was cut, and he was transferred to a store which had a lower volume of sales.

In the fall of 1980 Target purchased Ayr–Way. Darnell's title changed from assistant store manager to merchandise manager, while his duties remained essentially the same. In 1982 Darnell asked his district manager, Robert Martin if he could transfer to another store designated as T–102. His request was granted. Darnell claims that he asked to be transferred because he was told by a factory representative that the store manager, Tom Magill had a "program" to force him to retire.

Darnell was at store T–102 for two years, until it closed in 1984. At this time Darnell inquired about retirement. However district manager Richard Larson told Darnell he wanted Darnell to stay on. Darnell did stay on. He was transferred to store T–116, but he had not been there long before Larson asked Darnell to go to store T–112 to help with the Christmas season. Darnell was there for approximately five months. He liked working for T–112 store manager Linda Costello, in his view she was "marvelous" and they "got along beautiful."

Darnell returned to store T–116 for several months. In March of 1985, Larson approached him again, and told him that he wanted Darnell to go to store T–110 because he was having trouble with the store. Darnell took this as a compliment, perceiving himself as a valued troubleshooter. In March of 1985 Darnell was transferred to store T–110, where his supervisor was store manager Brenda Hickman.

Darnell did not like working for Hickman. However, he did not complain or otherwise notify district manager Larson about his difficulties with Hickman. He mentioned to regional personnel manager Nancy Laggard that Hickman did not like him. Darnell said that Laggard asked him not to retire. Darnell also complained to the other assistant manager at T–110, Herb Vanderploeg, about Hickman's treatment. Vanderploeg told Darnell that she treated him the same way.

In October of 1985 Darnell met with Larson. He told Larson that he could not work for Hickman anymore, and that he had decided to retire. Larson told Darnell that if he would agree not to retire, he would transfer Darnell to another store as soon as he could find a replacement. But Darnell stood firm with his decision to retire.

Darnell was not happy with the way his career at Target had ended. He filed a complaint alleging age discrimination with the EEOC in February 1986. After having failed to prevail before the EEOC, Darnell filed a suit in federal court under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* and 29 U.S.C. § 216.

Target, after taking Darnell's deposition, moved for summary judgment in March of 1989. Four months later, in July, Darnell

filed a response to Target's motion for summary judgment relying on three affidavits, his own, and one each from his former co-workers Cathy Martin and Barbara Sisler. Darnell's response to the summary judgment motion made no reference to his own earlier deposition testimony, but relied entirely on the three affidavits. Target thereafter took the depositions of Sisler and Martin.

The district court denied Target's summary judgment motion in August, relying on the affidavits, and without reference to the depositions of Darnell, Sisler, or Martin. Then, in December of 1989, after receiving the parties' pre-trial material, the district court examined the affidavits and the deposition testimony of Darnell, Sisler, and Martin. After reviewing this material the district court *sua sponte* vacated its denial of Target's summary judgment motion, finding that the "affidavits were replete with hearsay and speculation" and that in their deposition testimony "Sisler, Martin and Darnell capitulated on their affidavit statements."

Darnell now asks us to reverse the district court's grant of summary judgment. 808 F.Supp. 1370 (1992).

The standard of review we apply when reviewing a district court's summary judgment decision is *de novo*. *Witham v. Whiting Corp.*, 975 F.2d 1342, 1345 (7th Cir.1992). Fed.R.Civ.P. 56(c) states that a party is entitled to judgment as a matter of law if the pleadings, depositions, answers to interrogatories and affidavits "show that there is no genuine issue of material fact." Fed.R.Civ.P. 56(e) states that plaintiff must oppose defendant's motion with more than mere allegations or denials of the other party's pleading. The response must set forth "specific facts showing that there is a genuine issue for trial."

■ The issue we must resolve in this case is whether or not the district court, when faced by contradicting deposition testimony and affidavits from the same person, may grant summary judgment based on the facts revealed by the deposition testimony.

The controlling case is *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir.1985). At issue in *Babrocky* was "whether summary judgment is appropriate when a deponent contradicts in an affidavit an earlier admission of fact in a deposition that if true would entitle the moving party to a judgment." *Id.* In *Babrocky* the plaintiffs made admissions in deposition testimony which would have entitled the defendant to summary judgment. They subsequently sought to ameliorate the admissions by filing affidavits which contradicted the deposition testimony. The affidavit consisted of "bald assertions, entirely lacking in any recounting of specific facts such as required by Fed.R.Civ.P. 56(e)." *Id.* The district court in *Babrocky* determined that "conclusory allegations could not create a conflict with plain admissions in deposition testimony" and granted summary judgment. *Id.* This court affirmed the district court on appeal, noting that a "party should not be allowed to create issues of credibility by contradicting his own earlier testimony." *Id.*

This is precisely what Darnell attempts to do. For example, in his deposition he did not name any specific person as the chief instigator of the alleged program to terminate him. Then, in his affidavit, he specifically blamed Larson. Following *Babrocky*, the district court properly relied on Darnell's deposition testimony and disregarded Darnell's subsequent, contradictory affidavit. Inherently depositions carry an increased level of reliability. Depositions are adversarial in nature and provide the opportunity for direct and cross-examination.

The situation with Sisler and Martin is somewhat different from that of Darnell because they were deposed *after* filing affidavits. When they were deposed, they recanted all of the relevant elements in their affidavits. Martin's affidavit states that Darnell was excluded from "manager meetings." In her deposition she explained that she had seen the other managers drinking coffee together without Darnell present and that she had assumed that they were talking about business. Sisler similarly backed away from the specific allegations in her affidavit. In her affidavit she claimed that McGill had made demeaning statements about Darnell. In her deposition she said that she had not heard McGill make any demeaning statements about Darnell.

■ In *Miller v. A.H. Robins Co., Inc.,* 766 F.2d 1102, 1105 (7th Cir.1985) we held that "[p]arties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions." Herein, though the timing is reversed, the rule is the same. Darnell cannot "create issues of fact" by relying on the affidavits of Sisler and Martin, which they contradicted in their own depositions.

More recently, in *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993), we held that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment." In *Slowiak* the affidavits in question were generated by plaintiffs after admissions they made in their own depositions signalled the imminent demise of their case. Similarly, in this case, Darnell enlisted Sisler and Martin to buttress his case after his own deposition proved to be a disaster for him. Their depositions were taken by Target soon after receiving their affidavits. Sisler's and Martin's deposition testimony showed their affidavits to be without factual support, and therefore they cannot defeat Target's summary judgment motion.

■ We find, consistent with the district court, that the affidavits of Martin and Sisler are without factual support in the record, specifically that they are contradicted by their own deposition testimony. Therefore, following *Slowiak,* they cannot defeat a motion for summary judgment.

The district court, having determined that there were contradictions between the affidavits and the depositions of the plaintiff, found the depositions to be the proper basis for its decision on the issue of summary judgment. The district court applied the facts found in the record to the relevant law to determine whether or not Darnell had raised genuine issues of material fact to support each of the necessary elements of his claim. We now turn to a review of that part of the district court's decision.

Darnell sued under the Age Discrimination Employment Act, which provides in pertinent part that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623.

■ The plaintiff must prove that he was discharged because of his age. The employer's motive to discriminate on the basis of age must be a "but for" cause for the termination. *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 371 (7th Cir.1992). Because Darnell had no direct evidence of age discrimination, he had to utilize the indirect or burden-shifting method, which derives originally from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ To establish a prima facie case under the ADEA, using the *McDonnell Douglas* approach, Darnell had to establish that he is "(1) in the protected class; (2) performing the job satisfactorily; (3) nevertheless the subject of a materially adverse employment action; (4) others outside of the protected class were treated more favorably." *Konowitz v. Schnadig Corp.,* 965 F.2d 230, 232 (7th Cir.1992). Darnell was older than forty, so he is protected by the ADEA, and the first element is met. Darnell was not fired, which indicates that he was at least minimally meeting his employer's expectations, and his last review prior to resigning rated his job performance as satisfactory, so the second element is met.

■ For the third element, Darnell claims that he was constructively discharged. Demonstrating constructive discharge requires a showing that "a reasonable employee would have felt compelled to resign under the circumstances of the case." *Rodgers v. Western–Southern Life Ins. Co.,* 12 F.3d 668, 677 (7th Cir.1993) (citing *Brooms v. Regal Tube Co.,* 881 F.2d 412, 423 (7th Cir.1988)). In *Rodgers* we noted also that "an employee must seek legal redress while remaining in his or her job unless confronted with an 'aggravated situation' beyond 'ordinary' discrimination." *Id.* at 677.

For the fourth element, Darnell made various claims that younger employees were treated more favorably than he was.

The district court found that Darnell had failed to prove the required third and fourth elements, constructive discharge and disparate treatment. It therefore granted summary judgment. A *de novo* review of the record reveals that the district court was correct in its determination of these issues.

■ First, the district court noted that "the essence of Darnell's constructive discharge claim is that Target launched a 'program' to make his working conditions so intolerable he would retire." Darnell's direct evidence of the existence of this program consisted of (1) a statement made to Darnell by a non-employee of Target that such a program existed, (2) Darnell's overhearing of a store manager asking another employee for a list of all employees over age 55, and (3) one of his superiors asking him if he had thought about retiring. The district court correctly concluded that the first of these statements was inadmissible hearsay and that the others were inadequate to support Darnell's claim that a program existed to force him to retire.

Darnell's other claims refer to his working conditions. The relevant facts, as they relate to each of Darnell's separate allegations, are as follows. Darnell claims that he was deprived of responsibility for the payroll and the budget. Normally an operations manager, Darnell's title at store T–110, is responsible for these areas. Hickman took these functions away from Darnell. He claims that being deprived of these functions was part of the "program" to make his job intolerable. Target showed, and Darnell could not rebut, that he was unable to properly execute these functions. Target had good reason for its action. These changes in job responsibility in no way contributed to "intolerable" job conditions.

Darnell claims that his hours were long and hard, and that he was compelled to work longer hours than younger managers. However, at his deposition he admitted that he did not know how many hours other managers worked, that he volunteered to work extra hours, and that he could not prove how many hours he himself actually worked. Target demonstrated that all managers work long hours, particularly during the Christmas season. Darnell failed to demonstrate that the hours he worked were excessive or unreasonable. Darnell's claim that he was forced to work harder than younger managers was not supported by the record.

Darnell claims that he was forced to do menial tasks which he considered to be demeaning. For example, he had to gather shopping carts in the parking lot, and pick trash out of the bushes, and he once had to remove a bird's nest from the Target sign in front of the store. Target demonstrated that notwithstanding the title of operations manager, lower level managers, like Darnell, are responsible for store appearance and maintenance, and that many menial tasks must be performed to maintain the store and preserve its appearance. The menial tasks Darnell was required to carry out as a "manager" were not unreasonable under the Target requirements.

Darnell claims that he was constantly transferred between stores, and that this was part of the "program" to force him to retire. However, Target claimed legitimate business reasons for the transfers. Darnell presented no evidence that others were transferred less often or that Target's reasons for the transfers were in any way invalid.

Darnell also claims that he was excluded from a special program for Target managers called JET, which stands for job enhancement training. However, Target demonstrated that to be eligible for this program a manager must have a minimum performance rating of 64. Darnell's rating never exceeded 59. Target uses letter grades to characterize ranges of the numerical performance score. Darnell never exceed the "satisfactory" range. Managers eligible for the JET program had to be "satisfactory-plus."

Darnell makes much of the fact that his 1981 performance has an "S+" annotation, which was crossed out. However, this notation is irrelevant because the numerical score on the same page is obviously within the merely satisfactory range. Darnell was never qualified for the JET program.

■ Last, and most importantly, Darnell claims that he was treated in a demeaning manner by store manager Brenda Hickman.

However, various testimony characterized Hickman as "demanding," "overbearing," "condescending" and "overly critical." Target acknowledged that Hickman's performance as a supervisor was less than perfect, due to her harsh personality. The only evidence which Darnell has that he was treated badly by his employer is his poor relationship with Hickman. Hickman did not single Darnell out for bad treatment. She was mean and degrading to all employees she supervised.

■ Darnell cannot prove the third and fourth element of his claim. He was not constructively discharged, younger employees were not treated better. He showed only that his job was difficult, and required him to work long hours and perform unpleasant tasks and that on top of the ordinary demands of the job, he labored under an insufferable boss.

■ Finally, even if Darnell had succeeded in showing that he was constructively discharged, he failed to present any evidence that he had sought legal redress before resigning, as required by *Brooms*. To avoid this requirement, the plaintiff must show that the discrimination against him was "aggravated." However, his failure to show constructive discharge inevitably shows that he has failed to make the more difficult showing needed for his claim to go forward when he sought no legal redress before resigning.

■ In *Babrocky* we noted that "[t]he absolute consequences of granting summary judgment require that the district court examine the record closely and carefully." *Id.* at 862. In *Babrocky* the district court reviewed the deposition testimony and the affidavits, found the affidavits to be implausible, and properly concluded that the affidavits raised no issue of material fact. *Id.* The district court in this case followed the same procedure. It examined the depositions and affidavits, discovered a similar dearth of genuine factual issues, and *sua sponte* vacated its earlier denial of defendant's summary judgment motion.

As we have discussed above, essential elements of Darnell's case were shown by his deposition testimony to be without factual foundation. His subsequent remedial effort consisted of filing his own and Sisler's and Martin's contradictory affidavits. This effort was unavailing. His affidavit was invalid for reasons set out above, following *Babrocky*. The affidavits of Sisler and Martin were refuted out of their own mouths at their subsequent depositions.

The district court properly granted summary judgment.

AFFIRMED.