Jack L. **WESTPHAL**, Plaintiff,

v.

**WAUKESHA DRESSER/WAUKESHA ENGINE DIVISION, a Division of Dresser Industries, Inc., Defendant.**

No. 93–C–954.

United States District Court, E.D. Wisconsin.

June 15, 1994.

Shneidman, Meyers, Dowling & Blumenfield by Thomas Nelson, Milwaukee, WI, for plaintiff.

Lindner & Marsack by James R. Scott, Milwaukee, WI, for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The plaintiff, Jack L. Westphal, commenced this action on September 1, 1993, against Waukesha Dresser/Waukesha Engine Division, a division of Dresser Industries, Inc. ["WED/Dresser"]. His action is brought pursuant to the Age Discrimination in Employment Act ["ADEA"] of 1967, as amended, 29 U.S.C. § 621 *et seq.*

Mr. Westphal was born on February 11, 1936, and was employed by WED/Dresser from about July 20, 1961, until WED/Dresser terminated his employment in early November 1991. In his complaint, he alleges that his termination was effectuated by employees, agents, and representatives of WED/Dresser "including but not limited to Robert Morrison, plant manager; David Beecher, production manager; and Roger Whitacre, manager of labor relations." He avers that at the time of his termination, he "was a supervisor in [WED/Dresser's] electrical and machine repair departments and was [WED/Dresser's] chief electrician", and that he was qualified to perform such duties. Mr. Westphal also alleges that his "termination reflected a pattern or practice of terminating older management-level employees" at WED/Dresser. Specifically, he avers that between January 1, 1991, through September 1, 1992, WED/Dresser "eliminated the positions of and terminated at least five management-level employees" over the age of forty-five. During the same period of time, Mr. Westphal asserts that WED/Dresser "did not eliminate the position of any management-level employee who was under the age of 40."

Mr. Westphal further alleges that although WED/Dresser stated that his supervisor position was being eliminated:

[I]t at no time made a valid, good faith offer to permit Westphal to transfer into another position for which he was qualified, including but not limited to any electrician position. To the extent, if any, that a transfer to an electrician position in the bargaining unit was discussed with Westphal, neither Whitacre nor any other representative of the defendant provided Westphal any information concerning the wages, hours and terms and conditions of employment for the electrician position, although Westphal specifically requested such information from Whitacre.

Based on the above allegations, Mr. Westphal contends that WED/Dresser terminated him "and has otherwise discriminated against him because of his age in violation of" 29 U.S.C. § 623(a)(1) and did so willfully in violation of 29 U.S.C. § 626(b).

Mr. Westphal has also alleged that the age discrimination claims set forth in his district court complaint were timely filed with the Equal Rights Division of the State of Wisconsin Department of Industry, Labor and Human Relations ["WI–ERD"], as required by 29 U.S.C. § 626(d). Additionally, he asserts

that the WI–ERD subsequently cross-filed his discrimination claims with the Milwaukee District Office of the Equal Employment Opportunity Commission.

A jury trial in this action is scheduled to commence on June 27, 1994. Presently before the court is WED/Dresser's May 5, 1994, motion for summary judgment. WED/Dresser's motion will be granted in part and denied in part to the extent recited in this decision and order.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. Pursuant to Rule 56(c), only a "genuine issue" of "material fact" will defeat an otherwise proper motion for summary judgment. Material facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id. In determining whether the movant has satisfied his burden of persuasion on a summary judgment motion, the evidence is evaluated in the light most favorable to the nonmovant such that all justifiable or reasonable inferences are drawn in the nonmovant's favor. Id. at 255, 106 S.Ct. at 2513–14.

## II. BACKGROUND

The facts relating to Mr. Westphal's termination at WED/Dresser are largely undisputed. Except where noted, the following facts as set out by the defendant are not in dispute as the plaintiff has not challenged them. See Local Rule 6.05(d).

Mr. Westphal was born on February 11, 1936, and was employed by WED/Dresser at its heavy duty industrial engine manufacturing facility in Waukesha, Wisconsin, from July 20, 1961, until November 8, 1991. Defendant's Proposed Findings of Fact ["DPFF"] at ¶¶'s 1–2. Hourly production employees at WED/Dresser were at all times material to this litigation represented by a labor organization which was a party to successive collective bargaining agreements between the union and WED/Dresser. Mr. Westphal was employed by WED/Dresser in an hourly bargaining unit job from 1961 to 1977 at which time he was promoted to a supervisory position. DPFF at ¶¶'s 3–4.

On November 1, 1991, WED/Dresser reorganized its manufacturing and assembly areas at WED/Dresser to a "focus factory" format. DPFF at ¶ 6. As a result, various supervisory positions at WED/Dresser were eliminated including the plaintiff's position. DPFF at ¶¶'s 9–10. On November 5, 1991, Mr. Westphal was notified that his position as a "Supervisor–Electrical" was being terminated. DPFF at ¶ 5. None of the employees displaced at WED/Dresser because of the introduction of the "focus factory" concept at that facility have been replaced by WED/Dresser. DPFF at ¶ 11.

The parties appear to agree that on Tuesday, November 5, 1991, the day Mr. Westphal was advised that his position as a Supervisor–Electrical was being terminated, he was offered the opportunity to transfer into a vacant hourly bargaining unit position as an "electronic repair person." DPFF at ¶ 12; Plaintiff's Proposed Findings of Fact ["PPFF"] at ¶¶'s 1–2; Westphal deposition ["dep."] at 40. However, there is a significant factual dispute between the parties concerning the events following WED/Dresser's November 5, 1991, offer inviting Mr. Westphal to assume an electronic repair position.

The defendant's version of events is as follows. On Friday, November 8, 1991, Mr. Westphal telephoned the defendant's Human Resource Manager, Roger Whitacre, but he was not in his office. Mr. Westphal left a message for him to call him back "if he has time." Mr. Whitacre did not return Mr. Westphal's call of November 8, 1991. Westphal dep. at 54–55. Although he did not reach Mr. Whitacre that day, Mr. Westphal understood that if he wanted to accept the electronic repair position he was to report to work at WED/Dresser on Monday, November 11, 1991. Id. at 55.

Mr. Westphal did not report to work on Monday, November 11, 1991, because he had questions concerning the electronic repair job. However, he telephoned Mr. Whitacre on that day but was again told that he was not in the office. *Id.* at 56–57.

On Tuesday, November 12, 1991, Mr. Whitacre reached Mr. Westphal by telephone, and Mr. Whitacre stated, "I take it you are not coming back." Mr. Westphal responded only with a question as to why Mr. Whitacre had not returned his phone call on Friday, November 8, 1991. Mr. Westphal did not express interest in the electronic repair position during his conversation with Mr. Whitacre. He did not do so because he was angry at Mr. Whitacre for not returning his Friday phone call. *Id.* at 58–59.

Subsequently, Mr. Westphal received two letters, dated Tuesday November 12, 1991, and Wednesday, November 13, 1991, respectively, from WED/Dresser confirming his decision to decline the electronic repair position. Enclosed with one of those letters was a severance check. *Id.* at 62–63; *Frank affidavit ["aff."]* at ¶ 5, exhibits 107 and 108. The electronic repair position offered to Mr. Westphal was filled by an outside hire on May 11, 1992. *Frank aff.* at ¶ 5, exhibit 109.

Mr. Westphal's version of events following the November 5, 1991, offer of employment to him in an electronic repair position is considerably different from that given by WED/Dresser. Mr. Westphal states that on November 5, 1991, he told Mr. Morrison, the person who advised him that he was being terminated from his supervisory position, that he wanted the electronic repair job but that he had some questions and concerns about pay and benefits and such things that he wanted answered before he formally accepted the position. *Westphal dep.* at 41–42. Nevertheless, on that same day, Tuesday, November 5, 1991, Mr. Whitacre, who was the person Mr. Westphal was told to contact about accepting the electronic repair position, took Mr. Westphal's identification badge, walked Mr. Westphal to his desk, took his pager and keys and escorted him out of the WED/Dresser facility. *Westphal dep.* at 47–49; *Whitacre dep.* at 48–50.

On Tuesday, November 12, 1991, when Mr. Whitacre telephoned Mr. Westphal, Mr. Westphal denies stating that he did not want the electronic repair job. *Westphal dep.* at 58–59. Instead, he asked Mr. Whitacre why his telephone call on Friday November 8, 1991, had not been returned by him when his questions about the electronic repair job were supposed to have been answered. *Id.* at 58–60. Mr. Whitacre never answered Mr. Westphal's questions but concluded that Mr. Westphal did not want the electronic repair job. *Id.* at 58–59.

On Monday, November 11, 1991, a day before Mr. Whitacre spoke with Mr. Westphal by telephone, Mr. Whitacre authorized the payroll department to prepare a severance check for Mr. Westphal. *Whitacre dep.* at 65. Before he spoke by telephone with Mr. Westphal on November 12, 1991, Mr. Whitacre prepared a letter ultimately signed by David Beecher, WED/Dresser's Director of Manufacturing; this letter was sent to Mr. Westphal and purported to confirm that Mr. Westphal did not want the electronic repair position. *Id. See also Frank aff.* at ¶ 5, exhibit # 107 (copy of November 12, 1991, letter).

Subsequent to his phone conversation with Mr. Westphal on November 12, 1991, Mr. Whitacre prepared a second letter which was also signed by Mr. Beecher and sent to Mr. Westphal. That letter stated in part:

> In a telephone conversation with Roger Whitacre on November 13 [sic], 1991, you indicated that you would not accept the transfer to the Electronic Repair position.

*See Frank aff.* at ¶ 5, exhibit # 108 (copy of November 13, 1991, letter). Mr. Westphal denies telling Mr. Whitacre that he did not want the electronic repair job during their phone conversation on November 12, 1991. *Westphal dep.* at 58–59.

On May 11, 1992, Steven Versh, whose date of birth is October 7, 1967, filled the vacant electronic repair position that had been offered to Mr. Westphal. *Frank aff.* at ¶ 5, exhibit # 109; *Nelson aff.* at ¶ 2, exhibit # 1.

## III. ANALYSIS

The defendant's summary judgment motion is premised on the theory that the Mr. Westphal's age discrimination complaint concerns *solely* his termination of employment with WED/Dresser as a "Supervisor–Electrical" on November 8, 1991. Accordingly, to prevail at trial, Mr. Westphal must prove that he was discharged by WED/Dresser because of his age. *Darnell v. Target Stores,* 16 F.3d 174, 177 (7th Cir.1994). Because there is no direct evidence in the record of age discrimination by WED/Dresser against Mr. Westphal, nor does he suggest otherwise, Mr. Westphal must utilize "the indirect or burden-shifting method" to prove his claim of age discrimination. *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Monaco v. Fuddruckers, Inc.,* 1 F.3d 658, 660 (7th Cir.1993).

■ To establish a prima facie case of a discriminatory discharge because of age under the ADEA, using the *McDonnell Douglas* approach, Mr. Westphal must prove at trial (1) that he was in a protected class; (2) that he was performing his job satisfactorily; (3) that nevertheless he was subject of a materially adverse employment action; and (4) others outside of the protected class were treated more favorably. *Darnell,* 16 F.3d at 177 (citing *Konowitz v. Schnadig Corp.,* 965 F.2d 230, 232 (7th Cir.1992)). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to produce evidence demonstrating a legitimate non-discriminatory reason for the selection of the plaintiff for discharge. *Monaco,* 1 F.3d at 661. If the defendant successfully rebuts the presumption of age discrimination, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reasons for the plaintiff's discharge were really a pretext for the employment action. *Id.*

■ For purposes of summary judgment, the defendant concedes that Mr. Westphal can establish a prima facie case of age discrimination with respect to his termination from employment at WED/Dresser. However, WED/Dresser argues that the undisputed evidence of its transition to a "focus factory" system of management at WED/Dresser, which resulted in the elimination of some supervisory positions, including the plaintiff's, is a legitimate non-discriminatory reason for Mr. Westphal's discharge. The defendant argues that the plaintiff can point to no genuine issues of material fact for trial to support a finding that the defendant's reasons for terminating Mr. Westphal are pretextual.

In his response to the defendant's summary judgment motion, Mr. Westphal concedes that WED/Dresser's explanation for his termination from his "Supervisor–Electrical" position was not a mere pretext for age discrimination. With respect to Mr. Westphal's claim that WED/Dresser terminated him because of his age, the defendant's motion for summary judgment will be granted.

■ In spite of Mr. Westphal's concession that WED/Dresser's explanation for his discharge is not pretextual, he argues that summary judgment should not be fully granted to WED/Dresser. He points to the second aspect of his age discrimination complaint, namely, his charge that WED/Dresser discriminated against him because of his age by not rehiring him for the electrical repair position [the "rehire claim"]. *See* Complaint at ¶¶'s 15 and 18. With respect to the rehire claim, he contends that genuine issues of material fact preclude summary judgment such that he should be permitted to proceed to trial on the rehire claim.

In its reply brief, the defendant counters that summary judgment should nevertheless be fully granted because the plaintiff is precluded from pursuing his rehire claim; the defendant argues that Mr. Westphal failed to include the rehire claim in his underlying charge of discrimination which he filed with the WI–ERD and cross-filed with the EEOC as required by 29 U.S.C. § 626(d). *See Supplementary Scott aff.* at ¶ 3, exhibit # 110. Alternatively, WED/Dresser argues that if Mr. Westphal's rehire claim is deemed properly before the court, Mr. Westphal cannot establish a prima facie case of age discrimination as a matter of law with respect to such claim, thus warranting summary judgment on that claim as well.

Is Mr. Westphal's rehire claim properly before this court? As a general rule, "'allegations not contained in an EEOC charge [or a state administrative charge] cannot be contained in the complaint [filed in district court] ...'" *Weiss v. Coca–Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993) (citing *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989)). Thus, at first blush, it would appear that Mr. Westphal cannot pursue his rehire claim before this court because it was not advanced in his administrative complaints. *See Supplementary Scott aff.* at ¶ 3, exhibit # 110.

■ There is an exception, however, to the strict rule requiring that all age discrimination claims raised in a district court complaint be alleged in a previous administrative complaint. Specifically, if the claim omitted from the administrative complaint "reasonably grow[s] out of the [claim or] claims made therein" then such omitted claims may be pursued in the district court. *Weiss*, 990 F.2d at 337. *Cf. Oxman v. WLS–TV*, 12 F.3d 652, 660 (7th Cir.1993); *Schnellbaecher*, 887 F.2d at 127 (noting that "a limited EEOC investigation [of an administrative complaint] will not necessarily defeat a [district court] complaint where the [the district court] complaint contains allegations like or reasonably related to the EEOC charge [i.e. the administrative complaint], but which the EEOC failed to investigate.").

■ Mr. Westphal's administrative complaint, drafted pro se, is entitled to a liberal construction. *See Herman v. Nat'l Broadcasting Co., Inc.*, 744 F.2d 604, 606 (7th Cir.1984) (citing *Dickerson v. Deluxe Check Printers, Inc.*, 703 F.2d 276, 283 (8th Cir. 1983)), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). In other words, "the [administrative] charge which a plaintiff must file ... need not comply with the technical rules of legal pleading." *Dickerson*, 703 F.2d at 283. The administrative charge "requirement will be satisfied by the filing of a written statement which identifies the potential defendant and generally describes the action believed to be discriminatory." *Id.*

In my opinion, based on the record before this court, Mr. Westphal's rehire claim is "reasonably related" to his termination claim to the extent that on the day he was notified of his termination as a supervisor at WED/Dresser (i.e. November 5, 1991), he was simultaneously advised of the possibility of assuming the electronic repair position. In other words, the facts surrounding Mr. Westphal's termination are closely connected to the facts relating to his possible rehire with WED/Dresser.

The above conclusion is supported by the fact that the discovery conducted in this action has related both to Mr. Westphal's termination claim and his rehire claim. In my opinion, WED/Dresser has had adequate notice of Mr. Westphal's rehire claim and cannot realistically contend that it has been prejudiced by Mr. Westphal's failure to articulate his rehire claim clearly in his original administrative complaint filed with the WI–ERD. *See Schnellbaecher*, 887 F.2d at 127 (noting that "the reason behind the requirement that allegations not contained in an EEOC charge cannot be contained in the [district court] complaint is that the defendant must have notice of the charge ..."). Although Mr. Westphal's administrative complaint only referred to the termination claim, liberally construing that administrative complaint, I find that his rehire claim that was omitted from his administrative complaint "reasonably grow[s] out of the [termination claim] ... made therein" such that the rehire claim may be pursued in the district court. *Weiss*, 990 F.2d at 337.

I now will address the merits of Mr. Westphal's rehire claim in the context of the defendant's summary judgment motion. As with Mr. Westphal's termination claim, there is no direct evidence in the record of age discrimination by WED/Dresser in the rehiring process of Mr. Westphal. Thus, he presumably must utilize "the indirect or burden-shifting method" in his attempt to prove his claim of age discrimination. *Monaco*, 1 F.3d at 660. To prove his failure to rehire claim, Mr. Westphal must establish (1) that he was a member of a protected class; (2) that he applied and was qualified for a position for which WED/Dresser was seeking applicants; (3) that he was rejected for that position; and (4) that the employer hired instead a younger person. *Caldwell v. Nat'l Ass'n of*

*Home Builders,* 771 F.2d 1051, 1056 n. 2 (7th Cir.1985).

WED/Dresser argues that even if this court allows Mr. Westphal to proceed on his rehire claim, he cannot establish the third element of the prima facie case necessary to prove his rehiring age discrimination claim—that he was rejected for the open electronic repair position—because WED/Dresser offered Mr. Westphal that exact job.

The record is undisputed, on one level, that WED/Dresser offered Mr. Westphal the electronic repair position. Thus, admittedly, WED/Dresser has an arguable case for summary judgment. In my opinion, however, I find there are genuine issues of material fact as to whether the "offer" of the electronic repair job made to Mr. Westphal was in good faith and can be considered truly an offer of employment.

Based on the disputed facts surrounding what Mr. Westphal had to do to accept WED/Dresser's "offer" of employment, I believe that a reasonable trier of fact could find in favor of the nonmoving party, Mr. Westphal. One could conclude that the management of WED/Dresser did not offer Mr. Westphal the electronic repair job in good faith if it is believed that WED/Dresser management constructively prevented him from ever accepting the job in the first place by virtue of their course of conduct. I believe there is an issue of fact as to whether WED/Dresser's offer was in reality a de facto rejection because Mr. Westphal was never given a fair opportunity to accept the offer of employment.

Specifically, I believe a trier of the facts could conclude that the management of WED/Dresser really did not want to rehire Mr. Westphal because of his age as evidenced by such facts as the taking of Mr. Westphal's keys, name badge, pager, etc. on November 5, 1991, the failure of Mr. Whitacre to return timely Mr. Westphal's phone calls inquiring about his alleged job offer, and the hasty conclusion by WED/Dresser management, based on their negative inference premised on an alleged lack of communication from Mr. Westphal, that Mr. Westphal did not want the electronic repair job even though he never expressly stated that

sentiment. Furthermore, the speedy conclusion by WED/Dresser management that Mr. Westphal was not interested in the electronic repair job, which was made on November 12, 1991, only a week after Mr. Westphal was offered that job, is arguably suspect in light of the fact that WED/Dresser ultimately did not hire a person for that job until May 11, 1992, some six months later.

I find that there is a genuine issue of material fact which precludes summary judgment. In particular, I find that an issue of material fact exists as to whether Mr. Westphal did or did not refuse WED/Dresser's employment offer. The defendant's motion for summary judgment will be denied to the extent that it relates to Mr. Westphal's rehire claim.

### ORDER

Therefore, IT IS ORDERED that the defendant's motion for summary judgment be and hereby is granted on Mr. Westphal's claim that he was terminated by WED/Dresser from his supervisory position in violation of the ADEA, 29 U.S.C. § 621 *et seq.*

IT IS ALSO ORDERED that the defendant's motion for summary judgment be and hereby is denied on Mr. Westphal's claim that he was not rehired by WED/Dresser in violation of the ADEA, 29 U.S.C. § 621 *et seq.*

IT IS FURTHER ORDERED that no costs will be awarded in connection with the defendant's motion.