FILED BY CLERK

MAR 15 2007

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ALLSTATE INDEMNITY COMPANY and ALLSTATE INSURANCE COMPANY, | ) ) ) ) ) | 2 CA-CV 2006-0164 DEPARTMENT A |
| | ) | O P I N I O N |
| Plaintiffs/Appellees, | ) ) | |
| v. | ) ) | |
| LISA RIDGELY, a single person, | ) ) | |
| Defendant/Appellant. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20054583

Honorable Deborah Bernini, Judge

REVERSED AND REMANDED

Herman, Goldstein & Forsyth, P.C.
  By Keith B. Forsyth                                                                 Phoenix
                                                          Attorneys for Plaintiffs/Appellees

Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.
  By Thomas G. Cotter                                                                  Tucson

The Law Office of Elliot Glicksman, P.L.L.C.
  By Elliot Glicksman                                                                  Tucson
                                                          Attorneys for Defendant/Appellant

H O W A R D, Presiding Judge.

¶1         Appellant Lisa Ridgely challenges the trial court's grant of summary judgment in favor of appellees Allstate Insurance Company and Allstate Indemnity Company in Allstate's declaratory judgment action against her. Ridgely argues that Allstate should have been estopped from asserting the "not a resident of the household" coverage defense. Ridgely also argues the trial court erred by ruling that an ex parte sworn statement could not be contradicted by deposition testimony. Because we agree the trial court erred when it disregarded the deposition testimony, we reverse.

¶2         When reviewing a grant of summary judgment, we view the evidence and reasonable inferences from it in the light most favorable to the nonmoving party. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998). On March 20, 2004, Nicholas Perrow hosted a party at the home of Donald and Garnett Sloane, Perrow's grandparents. One of the partygoers was fatally shot at the home. Lisa Ridgely, the decedent's mother, filed a wrongful death claim against Perrow.

¶3         The Sloanes were the named insureds in Allstate homeowners and umbrella policies. Allstate suspected that Perrow might have been living with his uncle, not the Sloanes, at the time of the shooting and began investigating Perrow's coverage under the Sloanes' policy. Allstate asked Perrow to give a sworn statement, and although Perrow initially requested the presence of his attorney, he eventually gave the statement without his counsel being present. During the statement, Allstate questioned Perrow regarding his

2

Tucson residence. But Allstate never informed Perrow that the purpose of the examination was to dispute coverage under the Sloanes' policy.

¶4        While under oath, Perrow stated that, at the time of the shooting, he did not have a specific place in Tucson where he lived. He also stated that although he lived with the Sloanes when he was in elementary school and again when he was in his late teens, he was no longer a permanent resident of the Sloanes' home once he stopped working for them at their store.

¶5        Allstate then filed this declaratory judgment action against Perrow and Ridgely seeking a determination that Perrow was not a member of the Sloanes' household for coverage purposes. Perrow did not answer or otherwise defend against the action and was eventually defaulted. Ridgely's counsel deposed Perrow and, during his deposition, Perrow testified that at the time of the shooting, he considered the Sloanes' house his primary residence.

¶6        Ridgely filed a motion to exclude Perrow's ex parte statement taken by Allstate and to dismiss the declaratory judgment action. Allstate cross-moved for summary judgment, arguing Perrow was not covered by the policy because he was not a resident of the Sloanes' home. Prior to ruling on the summary judgment motion and the motion to dismiss, the trial court entered a default judgment against Perrow. The trial court then granted summary judgment in favor of Allstate, and Ridgely now appeals.

¶7 Ridgely first argues that Allstate should have been estopped from asserting Perrow was not a resident of the Sloanes' household because Allstate had a fiduciary duty to notify its insureds that coverage issues existed prior to questioning the insured about coverage. But Ridgely did not make this argument below, and we will not consider it on appeal.[1] *See Napier v. Bertram*, 191 Ariz. 238, ¶ 6, 954 P.2d 1389, 1390 (1998) (supreme court refused to consider contract theory of recovery when only negligence theory alleged and argued in trial court); *Kuehn v. Stanley*, 208 Ariz. 124, ¶ 19, 91 P.3d 346, 352 (App. 2004) (new factual theories waived on appeal from summary judgment if not first raised in trial court); *see also Crowe v. Hickman's Egg Ranch, Inc.*, 202 Ariz. 113, ¶ 16, 41 P.3d 651, 654 (App. 2002) ("Issues not properly raised below are waived.").

¶8 Ridgely next argues the trial court erred when it held "as a matter of law that [Perrow's] *ex parte* statement could not be contradicted by deposition." In its minute entry granting summary judgment, the trial court stated that Perrow's "two statements [were] contradictory and [could not] both be true." Relying on *Wright v. Hills*, 161 Ariz. 583, 780 P.2d 416 (App. 1989), *abrogated on other grounds by James, Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Protection*, 177 Ariz. 316, 868 P.2d 329 (App. 1993), and *MacLean v. State (Department of Education)*, 195 Ariz. 235, 986 P.2d 903 (App. 1999), the trial court then refused to consider Perrow's deposition testimony because it was given

---

[1]Because we reverse the summary judgment on other grounds, the waiver of this issue on appeal does not foreclose Ridgely from arguing it on remand, if it still can properly be raised. *See Andrews v. Blake*, 205 Ariz. 236, n.2, 69 P.3d 7, 13 n.2 (2003).

after the sworn statement.  We review de novo the propriety of summary judgment, *Link*, 193 Ariz. 336, ¶ 12, 972 P.2d at 673, and questions involving the interpretation of court rules, *Vega v. Sullivan*, 199 Ariz. 504, ¶ 8, 19 P.3d 645, 648 (App. 2001).

**¶9** In *Wright*, this court held that the "sham affidavit" rule applies in Arizona because "parties cannot thwart the purposes of Rule 56, [Ariz. R. Civ. P., 16 A.R.S., Pt. 2,] by creating issues of fact through affidavits that contradict their own depositions." 161 Ariz. at 588, 780 P.2d at 421; *see also Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (referring to the rule as the "[s]ham [a]ffidavit [c]oncept").  The rule states that when a party's affidavit is submitted to defeat summary judgment and contradicts the party's own deposition testimony, it should be disregarded in deciding the motion.  *Wright*, 161 Ariz. at 587, 780 P.2d at 420.  "[G]iv[ing] great weight to the federal interpretations of rules of civil procedure," the court reasoned that "[a]llowing a party to submit a contradictory affidavit after giving a deposition would greatly diminish the utility of summary judgment as a procedure for screening out genuine issues of fact."  *Id*. at 587-88, 780 P.2d at 420-21.

**¶10** *Wright* also held that certain exceptions exist to the sham affidavit rule, for instance, "if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly discovered evidence."  *Id*. at 588, 780 P.2d at 421.  This court, in *MacLean*, recognized the rule it adopted in *Wright*.  195 Ariz. 235, ¶ 20, 986 P.2d at 909.

But in that case, the court did not apply it because it found the affidavit and the deposition did "not clearly conflict." *Id*.

¶11 While *Wright* and *MacLean* provide guidance on this issue, they are not dispositive. *Wright* and *MacLean* held that a party's *prior* deposition testimony cannot be contradicted by the party's *subsequent* affidavit submitted to defeat summary judgment and did not address the issue presented here: whether a former party/witness's *prior* sworn statement or affidavit can be contradicted by *subsequent* deposition testimony to defeat summary judgment. Because we have found no Arizona cases addressing the issue presented here, we look to the federal and out-of-state cases for guidance.

¶12 In *Darnell v. Target Stores, Inc.*, 16 F.3d 174 (7th Cir. 1994), the Seventh Circuit considered a case in which a party's deposition testimony was contradicted by his subsequent affidavit and two witnesses' prior affidavits were contradicted by their subsequent deposition testimony. After applying the sham affidavit rule to the party's affidavit, the Seventh Circuit extended the rule to the prior affidavits of two witnesses who had been deposed after they had submitted their affidavits. *Id*. at 177. The witnesses' affidavits would have prevented summary judgment, but the later deposition testimony supported the entry of summary judgment. *See id*. at 176-77. The Seventh Circuit stated that "though the timing is reversed, the rule is the same" and held that witnesses' "'[s]elf-serving affidavits,' . . . that . . . [we]re contradicted by their own [subsequent] deposition testimony . . . [could] not defeat a motion for summary judgment." *Id*. at 177, *quoting Slowiak v. Land O'Lakes, Inc.*,

6

987 F.2d 1293, 1295 (7th Cir. 1993) (first alteration in *Darnell*). But, because the deposition in *Darnell* was presented in support of summary judgment, *see id*. at 175-76, and here the deposition was presented to defeat summary judgment, further analysis into the purpose—to prevent parties from thwarting Rule 56—and application of the sham affidavit rule is necessary to determine whether it applies in this case.

¶13        The federal courts, when applying the sham affidavit rule, have given greater weight to deposition testimony than affidavits. They conclude that because deposition testimony is subject to cross-examination, it is inherently more reliable than an affidavit. *See Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 577-78 (2d Cir. 1969); *Darnell*, 16 F.3d at 176. When the court in *Darnell* applied the sham affidavit rule to the party's affidavit that contradicted his prior deposition testimony, it reasoned "[i]nherently[,] depositions carry an increased level of reliability . . . [because they] are adversarial in nature and provide the opportunity for direct and cross-examination." *Id*. at 176. State courts have also found that deposition testimony is inherently more reliable than an affidavit. *See Hancock v. Bureau of Nat'l Affairs, Inc.*, 645 A.2d 588, 590-91 (D.C. 1994); *Lipsteuer v. CSX Transp., Inc.*, 37 S.W.3d 732, 736 (Ky. 2000); *Webster v. Sill*, 675 P.2d 1170, 1172 (Utah 1983); *Best v. Daimler Chrysler Corp.*, 141 P.3d 624, 627 (Utah Ct. App. 2006).

¶14        Additionally, the federal cases indicate that the sham affidavit rule is properly applied when a nonparty affiant has some motive, emotional or financial, to fabricate sham issues of fact. A federal district court, in *Martin v. City of New York*, 627 F. Supp. 892, 896

7

(E.D.N.Y. 1985), applied the rule to a witness's subsequent contradictory affidavit. But, in that case, the plaintiff sued the City of New York based on the circumstances surrounding his arrest on charges of rape and sodomy. *Id*. at 894. He alleged, inter alia, that the officers assaulted him and were racially biased. *Id*. at 894-95. The City moved for summary judgment and the plaintiff produced his mother's affidavit, which contradicted her prior deposition testimony. *Id*. at 895-96. The court held that the sham affidavit rule prohibited the plaintiff "from coming forward with the . . . [a]ffidavit for the purpose of attempting to defeat the City's motion for summary judgment." *Id*.

¶15 The Seventh Circuit has also applied the sham affidavit rule to a witness's affidavit. In *Adelman-Tremblay v. Jewel Cos.*, 859 F.2d 517 (7th Cir. 1988), the plaintiff submitted an affidavit by her only expert witness that contradicted the expert's prior deposition testimony. *Id*. at 519-20. The court held that the sham affidavit rule applied to a "case involving the testimony and affidavit of [a] plaintiff's sole expert witness" and that the submission of the affidavit in that case was "little more than a desperate attempt to resuscitate her claim." *Id*. at 521. In both *Martin* and *Adelman-Tremblay*, the courts were faced with subsequent contradictory affidavits of witnesses who had interests in defeating summary judgment in the cases, which lent further support to the courts' conclusions that the affidavits were shams and should not have been considered.

¶16 Finally, none of the cases has adopted a bright-line test to determine when an affidavit is a sham. Rather, the consensus is that the issue must be dealt with on a case-by-

8

case basis. *See Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 728 (9th Cir. 1997) (prior to disregarding contradictory affidavits, a trial court "'must make a factual determination that the contradiction was actually a sham'"), *quoting Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991) (trial court required to "actually examin[e] [plaintiff]'s actions and ma[k]e a finding of fact that they were a 'sham'"); *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993) (contradictory affidavit not automatically disregarded); *Durtsche v. Am. Colloid Co.*, 958 F.2d 1007, 1010 n.2 (10th Cir. 1992) (same); *see also MacLean*, 195 Ariz. 335, ¶ 20, 986 P.2d at 409 (court did not apply sham affidavit rule because deposition and affidavit "not clearly [in] conflict"); *Gatson v. The Rest. Co.*, 260 F. Supp. 2d 742, 760-61 (N.D. Iowa 2003) (court found statements "not directly contradictory" and did not apply sham affidavit rule); *Treadwell v. Dow-United Techs.*, 970 F. Supp. 962, 967 (M.D. Ala. 1997) (court refused to apply rule because affidavit and testimony could be read consistently).

¶17     Here, Perrow's deposition was not taken in response to a motion for summary judgment; therefore, it was not apparently directed at "thwart[ing] the purposes of Rule 56." *MacLean*, 195 Ariz. 235, ¶ 20, 986 P.2d at 909; *Wright*, 161 Ariz. at 588, 780 P.2d at 421. Nor does the record reflect that Ridgely had any part in procuring Perrow's change in his testimony. *Cf. Adelman-Tremblay*, 859 F.2d at 521; *Martin*, 627 F. Supp. at 896. In fact, Ridgely and Perrow were adverse parties in the underlying personal injury action.

¶18     Furthermore, the "increased level of reliability" of deposition testimony suggests that Perrow's deposition, which was subject to direct and cross-examination and defeats summary judgment, must be considered. *Darnell*, 16 F.3d at 176. And, in his deposition, Perrow at least attempted to explain why some of his answers there differed from his prior statement. Finally, Perrow did not file an answer in this action and had been defaulted. His default, at a minimum, creates a factual issue as to whether he has any motive to testify in a way supporting a determination of coverage. *Cf. Adelman-Tremblay*, 859 F.2d at 521; *Martin*, 677 F. Supp. at 896.

¶19     Based on these facts, we conclude that the purposes underlying the sham affidavit rule do not support applying the rule in this case. Ridgely is merely in the position of any party when a witness changes his or her testimony and the issue becomes the witness's, i.e., Perrow's, credibility. *See Tippens*, 805 F.2d at 954 ("Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all."); *see also* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2726, at 448 (3d ed. 1998) ("[S]ome courts have ruled that conflicts between depositions and later-filed affidavits present questions of credibility."); *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980); *Price v. Worldvision Enters., Inc.*, 455 F. Supp. 252, 265 (S.D.N.Y. 1978), *aff'd*, 603 F.2d 214 (2d Cir. 1979). When deciding a motion for summary judgment, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

10

inferences from the facts are jury functions, not those of a judge.'" *Thompson v. Better-Bilt Aluminum Prods. Co.*, 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986), *quoted with approval in Orme Sch. v. Reeves*, 166 Ariz. 301, 309-10, 802 P.2d 1000, 1008-09 (1990) (alteration in *Thompson*). We agree with the trial court that both of Perrow's statements cannot be correct, but neither that court nor this court is in a position to decide which statement to believe.

¶20 Nevertheless, at oral argument, Allstate contended that we should find as a matter of law that Perrow's deposition testimony was a sham based on his financial interest in avoiding liability for the wrongful death and the obvious change in his testimony which was not explained in the record. But these contentions merely raise issues of fact which a jury must address. They do not demonstrate as a matter of law that the deposition testimony was procured by Ridgely for the sole purpose of thwarting Rule 56, which would render the deposition a sham.

¶21 Allstate also claims the trial court properly found as a matter of law that Perrow was not a resident of the Sloanes' home. Summary judgment is appropriate where the facts would not allow reasonable minds to differ. *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008; *Shaw v. Peterson*, 169 Ariz. 559, 560, 563, 821 P.2d 220, 221, 224 (App. 1991). The trial court did not consider Perrow's deposition testimony in making that determination, as we conclude it was required to do. Nor is this a case in which, considering all the evidence,

11

reasonable minds could not differ regarding Perrow's residency. *See id.*; *see also Mid-Century Ins. Co. v. Duzykowski*, 131 Ariz. 428, 430, 641 P.2d 1272, 1274 (1982) ("Factors to consider in determining whether an individual is a 'resident of the same household' include, but are not limited to, the individual's presence in, or absence from, the named insured's home on the date of the occurrence; the reasons or circumstances relating to the absence or presence; the relationship of the individual to the named insured; living arrangements of the individual in earlier time periods; the individual's subjective or declared intent with respect to the place of residence; the existence of a second place of lodging."). Consequently, the trial court erred when it found "as a matter of law that . . . Perrow was not a resident of the Sloane household at the time of the shooting incident."

¶22      For the foregoing reasons, we reverse the trial court's order granting summary judgment and remand the case for further proceedings consistent with this opinion.

                                        _____
                                        JOSEPH W. HOWARD, Presiding Judge


CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____

12

GARYE L. VÁSQUEZ, Judge