226 P.3d 403

**Ray FEDERICO, an Arizona resident,
Plaintiff/Appellant,**

v.

**Zoran MARIC, M.D., a licensed health
care provider, Defendant/Appellee.**

**No. 1 CA–CV 08–0841.**

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 28, 2010.

Surrano Law Offices by Charles J. Surrano, III, John N. Wilborn, Trinette G. Kent, Phoenix, Attorneys for Plaintiff/Appellant.

Jones Skelton & Hochuli, PLC by William R. Jones, Jr., Jennifer A. Baker, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

IRVINE, Judge.

¶ 1 Ray Federico ("Federico") appeals the superior court's grant of summary judgment in favor of Zoran Maric ("Maric"). Federico argues that in granting summary judgment, the superior court misapplied the law of aiding and abetting, requiring him to prove his case under too strict a standard for summary judgment. Federico also argues that the court erred in viewing the evidence presented in a light more favorable to the party moving for summary judgment. For the following reasons, we affirm the superior court's order granting summary judgment in favor of Maric.

## FACTS AND PROCEDURAL HISTORY[1]

¶ 2 In April 2005, Federico sustained injuries, including to his back, as a result of an automobile accident that occurred while he was engaged in the activities of his employment as a driver for United Parcel Service ("UPS"). Federico initiated a claim for worker's compensation benefits based on his injuries. He briefly received treatment for his injuries through M.B.I. Industrial Medicine ("MBI"), a licensed occupational health care provider of occupational health services for employees of UPS. Liberty Mutual Insurance Company ("Liberty Mutual"), UPS's worker's compensation insurer, denied Federico's claim for further treatment so Federico began treatment with a chiropractor on his own.

¶ 3 In April 2006, after having returned to full duty, Federico returned to MBI complaining that he had re-aggravated the back injury and was found by MBI to have a high probability of permanent impairment. Liberty Mutual accepted the new injury as part of the April 2005 [2] injury and allowed Federico to receive limited treatment. In May 2006, Federico suffered another work-related injury, this time to his knee. In June 2006, Liberty Mutual requested MBI obtain an independent medical examination ("IME") of Federico. In the request, Liberty Mutual suggested having Maric perform the IME and Maric was subsequently retained to conduct the IME.

¶ 4 After Maric conducted a brief IME of Federico, he submitted his results to Liberty Mutual suggesting that Federico needed no further medical treatment. Maric noted Federico's subjective complaints of pain and concluded that Federico demonstrated no objective evidence of physical injury or pain. He also suggested a possibility of malingering by Federico. Thereafter, Liberty Mutual denied Federico's worker's compensation claim.

¶ 5 Federico filed suit against Liberty Mutual, MBI, the treating doctors at MBI, and Maric, seeking damages for Liberty Mutual's unreasonable denial of his claim for worker's compensation benefits, bad faith handling of his claim, and for the aiding and abetting of Liberty Mutual's bad faith conduct by the MBI doctors and Maric. Maric filed a motion for summary judgment alleging that Federico could not prove the aiding and abetting claim. After oral argument, the court

---

1. We consider only those facts pertinent to the claim against Maric and agree with Maric that those facts asserted by Federico of which Maric had no knowledge and which did not reflect on the claim against Maric are not properly part of this appeal.

2. While Federico's brief says April 2006, we presume that he meant April 2005, the date of the original injury.

granted Maric's motion "for the reasons stated on the record" and entered a judgment in Maric's favor. Liberty Mutual then filed motions for partial summary judgment after which Liberty Mutual and the remaining defendants reached separate settlements with Federico and the suit was dismissed by stipulation.

¶ 6 Federico filed a timely notice of appeal in regard to the judgment in Maric's favor and we have jurisdiction pursuant to Arizona Revised Statutes section 12–2101(B) (2003).

## DISCUSSION

### I. Standard of Review

 ¶ 7 A court properly grants summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ariz.R.Civ.P. 56(c). In addition, summary judgment is proper if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that a reasonable jury could not agree with the conclusion advanced by the proponent. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). On appeal, we determine de novo whether a genuine issue of material fact exists and whether the superior court properly applied the law. *L. Harvey Concrete, Inc. v. Agro Const. & Supply Co.*, 189 Ariz. 178, 180, 939 P.2d 811, 813 (App.1997). Additionally, we view the evidence and reasonable inferences from it in the light most favorable to the non-moving party. *Allstate Indem. Co. v. Ridgely*, 214 Ariz. 440, 441, ¶ 2, 153 P.3d 1069, 1070 (App.2007); *Orme School*, 166 Ariz. at 309–10, 802 P.2d at 1008–09. We will affirm a grant of summary judgment if the trial court was correct for any reason. *City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14, 32 P.3d 31, 36 (App.2001).

### II. Aiding and Abetting

 ¶ 8 The law of aiding and abetting in Arizona was extensively addressed in *Wells Fargo Bank v. Arizona Laborers,*

*Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002). Federico's citations to cases from other jurisdictions, so far as they contradict *Wells Fargo,* are unpersuasive. In *Wells Fargo* our supreme court noted that "Arizona recognizes aiding and abetting as embodied in Restatement § 876(b), that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person." 201 Ariz. at 485, ¶ 31, 38 P.3d at 23. "[A]iding and abetting liability does not require the existence of, nor does it create, a pre-existing duty of care.... Rather, aiding and abetting liability is based on proof of a scienter ... the defendants must know that the conduct they are aiding and abetting is a tort." *Id.* at ¶ 33 (quoting *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 186 (Minn.1999)). Claims of aiding and abetting tortious conduct require proof of three elements:

> (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff;[3]
>
> (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and
>
> (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach.

*Wells Fargo*, 201 Ariz. at 485, ¶ 34, 38 P.3d at 23.

 ¶ 9 "Because aiding and abetting is a theory of secondary liability, the party charged with the tort must have knowledge of the primary violation...." *Id.* at ¶ 36. Such knowledge may be inferred from the circumstances. *Id.* However, an inference of knowledge will not be made lightly.

¶ 10 *Wells Fargo* involved the Wells Fargo Bank's (the "bank") aiding and abetting J. Fife Symington, III's ("Symington") attempts to obtain permanent construction financing from various union pension funds (the "Funds") through fraudulent means. The *Wells Fargo* court found evidence supporting the inference that the bank had knowledge of Symington's fraud contained in various finan-

---

3. For the purpose of this appeal only, we consider, and the parties agree, that Liberty Mutual may be assumed to have committed a tort that caused injury to Federico. Thus, we address only the second and third elements of this test.

cial statements used by Symington that the bank knew were false. *See id.* at 486–88, ¶¶ 37–45, 38 P.3d at 24–26. The court found that the

> accumulation of evidence raises the inference that the Bank knew Symington was engaged in false representations to the Funds. Accordingly, a jury could find that the Bank's actions and internal communications provide evidence of a resolute strategy to avoid having the Funds learn what it knew about Symington's financial situation.

*Id.* at 488, ¶ 45, 38 P.3d at 26. The court held that "[a] showing of actual and complete knowledge of the tort is not uniformly necessary to hold a secondary tortfeasor liable under an aiding and abetting theory.... 'The knowledge requirement' can be met, 'even though the bank may not have known of all the details of the primary fraud—the misrepresentations, omissions, and other fraudulent practices.'" *Id.* (quoting *Aetna Cas. and Sur. Co. v. Leahey Const. Co., Inc.*, 219 F.3d 519, 536 (6th Cir.2000)).

■ ¶ 11 Federico argues that sufficient facts were raised in this case to at least raise a contested issue of material fact that Maric knew of Liberty Mutual's intent to act in bad faith. We disagree. While we view the evidence in the light most favorable to Federico, the inferences made from those facts must be reasonable. Federico asked the superior court to infer Maric's knowledge from the following facts and allegations:

1. Maric knew he was working for Liberty Mutual.

2. Maric had done work for Liberty Mutual before.

3. Maric knew that calling somebody a malingerer can have a negative connotation.

4. Maric knew that opining that a claimant is motivated by secondary gains can have a negative affect on their claim.

5. Maric knew that his IME report would adversely affect the outcome of Federico's workmans' compensation claim.

6. Maric prejudges the patients he sees because he believes that the honest claims by legitimately injured people are settled and he never sees those people.

7. Maric believes the people he sees are seeking monetary damages far beyond what is appropriate.

8. Maric finds almost 60% of the people he sees are imagining their pain or exaggerating their pain to make money from lawsuits.

9. Maric believes that he sees a skewed population of patients.

10. Maric finds only about 3.7% of the people on whom he performs IMEs are truly injured, and that injury was caused by the incident complained of.

11. Maric believes that lawsuits drive the amount of care because that is how claimants' attorneys make more money.

12. Maric performed an inadequate medical examination of Federico.

Even if we accept all of these allegations as true, none of them suggests in any way that Maric had knowledge of Liberty Mutual's intent or even propensity to act in bad faith toward Federico's claim. We see no way that a reasonable jury could find that the alleged facts provide evidence of a strategy to assist Liberty Mutual in acting in bad faith or even a general knowledge that Liberty Mutual was acting in bad faith in this case. It is clear that the facts asserted by Federico pertain only to Maric's own actions and the propriety thereof with any reference to the actions of Liberty Mutual or the knowledge of those actions by Maric.

¶ 12 Federico's argument comes down to the assertion that any time Liberty Mutual hires Maric, even through a third party intermediary, it does so to further its bad faith intent and, because of that, any time Maric performs an IME for Liberty Mutual, even when retained through a third party intermediary, he does so for the purpose of aiding and abetting Liberty Mutual in acting in bad faith. Federico further argues that Maric knows or has a general knowledge that his IMEs will be used by Liberty Mutual for an improper purpose (i.e., the denial of claims in bad faith). These arguments go far beyond the inferences that may reasonably be drawn from the facts presented.

**38**

¶ 13 Given the facts actually presented by Federico, the superior court could properly find that the facts Federico produced in support of his claim against Maric had so little probative value, given the quantum of evidence required, that a reasonable jury could not agree with the conclusion advanced by Federico. Lacking any evidence to support even the inference of knowledge by Maric, summary judgment was proper.

 ¶ 14 As to the substantial assistance element of aiding and abetting, Federico failed to provide any evidence to support even the inference that Maric's IME assisted Liberty Mutual in its acting in bad faith. While evidence may show that Liberty Mutual requested the IME for a questionable purpose (i.e., because of Federico's numerous contacts regarding his injury), this does not mean that the IME was necessary in order for Liberty Mutual to act in bad faith. In fact, the same evidence cited by Federico contains indications that the IME was unnecessary in order for Liberty Mutual to deny Federico's claim (e.g., Liberty Mutual employee's questioning of the necessity or usefulness of the IME when Federico was already discharged from care). Lacking any evidence to support even the inference of substantial assistance, summary judgment was also proper on the basis that Federico did not raise an issue of material fact in regard to the substantial assistance element for a claim of aiding and abetting.

¶ 15 Federico goes on to argue that the superior court applied the wrong standard to the facts alleged by Federico. We find no merit in this argument. While the court made statements in regard to looking at something from the perspective of the doctor, it appears even from the excerpts in Federico's opening brief that such references related to assessing what Maric knew or could be implied to have known. Such statements are not an indication that the court did not view the facts in a light most favorable to Federico. Furthermore, we note that all of the testimony and alleged facts that Federico points us to on this issue clearly go to whether Maric acted improperly without any apparent connection to a claim that Maric aided and abetted Liberty Mutual in its allegedly

improper actions. Thus, even if the court did view these facts in the wrong light, the error would have no effect on the court's decision as to whether Federico's claim of aiding and abetting could survive summary judgment.

## CONCLUSION

¶ 16 For the above mentioned reasons, we affirm the superior court's grant of summary judgment in Maric's favor.

CONCURRING: JOHN C. GEMMILL, Presiding Judge, and JON W. THOMPSON, Judge.