NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IGLESIA DE JESUCRISTO MINISTERIOS A LOS PIES DEL MAESTRO,
*Plaintiff/Appellant*,

v.

BROTHERHOOD MUTUAL INSURANCE COMPANY, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 21-0358
FILED 9-20-2022

---

Appeal from the Superior Court in Maricopa County
No.  CV2020-009227
The Honorable Roger E. Brodman, Judge *Retired*

**AFFIRMED**

---

COUNSEL

Poli Moon & Zane PLLC, Phoenix
By Michael N. Poli, Lawrence R. Moon
*Co-Counsel for Plaintiff/Appellant*

Taylor Young Appeals, PLLC, Phoenix
By Taylor C. Young
*Co-Counsel for Plaintiff/Appellant*

Jones Skelton & Hochuli PLC, Phoenix
By Donald L. Myles, Jr., Patrick C. Gorman
*Counsel for Defendant/Appellee Brotherhood Mutual Insurance Company*

Udall Law Firm LLP, Phoenix
By Elizabeth L. Fleming
*Counsel for Defendant/Appellee Augspurger Komm Engineering Inc.*

---

## MEMORANDUM DECISION

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie joined. Vice Chief Judge David B. Gass dissented.

---

**P A T O N**, Judge:

**¶1** Iglesia de Jesucristo Ministerios A Los Pies del Maestro ("the Church") appeals from the superior court's grant of a motion to dismiss its aiding and abetting claim against Augspurger Komm Engineering, Inc. ("AKE"). We affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** We take all well-pled factual allegations as true when reviewing the superior court's grant of a motion to dismiss under Arizona Rule of Civil Procedure 12(b)(6). *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

**¶3** In 2016, the Church held an insurance policy with Brotherhood Mutual Insurance Company ("Brotherhood"). That year, thirty-two out of its thirty-five air conditioning units were damaged in an August hailstorm. Following the storm, the units malfunctioned and did not adequately cool rooms on the Church's property. The Church was unaware that this loss in function was connected to the 2016 hailstorm and did not immediately submit a claim. In 2018, another hailstorm struck the Church's property, and the Church submitted a claim to Brotherhood for the damage resulting from both hailstorms.

**¶4** Brotherhood acknowledged the claim and retained AKE to inspect the units. AKE prepared a report finding that the units exhibited fin deformations "most consistent with hailstone impacts." But AKE found the damage was not caused by either the 2016 or 2018 storms but by a 2010

2

hailstorm, which was prior to the Church purchasing the property and Brotherhood covering the insured property.

¶5        Brotherhood denied the claim based on AKE's finding.  The Church sued both Brotherhood and AKE—alleging breach of contract, breach of implied duty of good faith and fair dealing, and bad faith denial of an insurance claim against Brotherhood, and aiding and abetting tortious conduct against AKE.

¶6        Brotherhood settled with the Church, and the superior court dismissed the claims against it.  AKE filed a motion to dismiss for failure to state a claim under Arizona Rule of Civil Procedure 12(b)(6).  AKE argued the Church had not alleged, and the court could not infer, that AKE had actual knowledge of bad faith committed by Brotherhood.  AKE further argued that no allegation or inference had been made that AKE had substantially assisted the alleged tortious conduct of Brotherhood.  The court found the Church had not pled facts sufficient to support its action against AKE.  Specifically, the court noted that "[the Church] has no claim against AKE unless AKE's report was, in fact, knowingly inaccurate."  It further explained that the Church had "not pled facts showing that AKE knew that [Brotherhood] made [the Church] a lowball offer or that AKE's conduct provided substantial assistance.  There is no allegation that AKE had any role in the ultimate claim decision."  But the court granted leave for the Church to file an amended complaint as a matter of right.

¶7        The Church filed an amended complaint asserting the same causes of action with additional allegations, including that AKE knew Brotherhood would rely on the report and breach its duties to the Church by denying the claim.  The Church further alleged that AKE ignored contrary evidence that suggested the 2016 storm was responsible for the damage to the units.  AKE filed a second motion to dismiss for substantially the same reasons as before: that the amended complaint lacked any fact indicating AKE substantially assisted with a tort and that no allegation or inference of actual knowledge was present.  The superior court granted this second motion to dismiss without leave to amend the complaint.

¶8        The Church filed a motion to alter or amend the judgment under Arizona Rule of Civil Procedure 59, which the superior court denied.  The court awarded costs to AKE as the prevailing party under Arizona Revised Statutes ("A.R.S.") § 12-341.  The Church timely appealed.

¶9        We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

¶10 We review the superior court's dismissal of a complaint under Arizona Rule of Civil Procedure 12(b)(6) de novo. *Conklin v. Medtronic, Inc.*, 245 Ariz. 501, 504, ¶ 7 (2018). In so doing, we may consider exhibits to the complaint. *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 9 (2012). Dismissal under Rule 12(b)(6) is proper if, "as a matter of law [Plaintiff] would not be entitled to relief under any interpretation of the facts susceptible of proof." *CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, 576-77, ¶ 10 (2021) (internal quotation omitted). While Arizona follows a notice pleading standard, "mere conclusory statements are insufficient to state a claim upon which relief can be granted." *Cullen*, 218 Ariz. at 419, ¶ 7.

### I. The superior court correctly dismissed the aiding and abetting claim against AKE.

¶11 The tort of aiding and abetting requires proof of three elements: (1) the primary tortfeasor committed a tort causing injury to the plaintiff, (2) the defendant knew the primary tortfeasor's conduct constituted a breach of its duties to the plaintiff, and (3) the defendant substantially assisted or encouraged the primary tortfeasor in achieving the breach. *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 485, ¶ 34 (2002); Restatement (Second) of Torts § 876(b).

¶12 The underlying tort in this case, bad faith denial of a claim by an insurer, occurs when (1) the insurer acts unreasonably towards its insured and (2) the insurer did so either knowingly or with reckless disregard to whether it was acting unreasonably. *Acosta v. Phoenix Indem. Ins. Co.*, 214 Ariz. 380, 383, ¶ 13 (App. 2007). Bad faith is an intentional tort. *See Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190 (1981).

¶13 While a plaintiff need not allege that an aiding and abetting defendant had "[a]ctual and complete knowledge of the details of a primary tort," he must allege that "the defendants knew the conduct they allegedly aided and abetted was a tort." *Dawson v. Withycombe*, 216 Ariz. 84, 102, ¶ 50 (App. 2007) (citing *Wells Fargo*, 201 Ariz. at 485, ¶¶ 33, 35 (2002)). Courts typically require that a defendant have "*actual knowledge* of the specific primary wrong that he is substantially assisting" to be liable under the Second Restatement formulation. *See In re Hydroxycut Mktg. and Sales Pracs. Litig.*, 299 F.R.D. 648, 657 (S.D. Cal. 2014) (dismissing claim for aiding and abetting deceptive advertising scheme where plaintiffs did not allege that defendants had knowledge of the falsity or deceptiveness of primary

tortfeasor's marketing) (citing *In re First Alliance Mortgage Co.*, 471 F.3d 977, 993 (9th Cir. 2006); Restatement (Second) of Torts § 876(b)). A conclusory allegation that an alleged aider-and-abettor knew that a report prepared for an insurer would be used for an improper purpose is insufficient to plead the knowledge element of an action for aiding and abetting the tortious bad faith denial of an insurance claim. *See Federico v. Maric*, 224 Ariz. 34, 37, ¶¶ 11-12 (App. 2010).

¶14     Here, the Church advances the following relevant allegations in its amended complaint: (1) AKE prepared a report for Brotherhood analyzing the claim of hailstone damage, (2) this report was "biased and outcome-oriented,"(3) AKE knew Brotherhood would rely on the report in declining the claim, (4) AKE had at least "a general understanding" of Brotherhood's duties given its experience in the insurance industry, and (5) the report was incorrect and failed to engage with contrary evidence.

¶15     Taken as true, these allegations fall short of pleading the knowledge element of an aiding and abetting claim. In *Federico*, this court upheld a grant of summary judgment concerning an aiding and abetting claim against a physician who performed an independent medical examination ("IME"). 224 Ariz. at 35, ¶¶ 3-4. As here, the non-moving party asked the superior court to infer the knowledge element from the fact that the physician possessed knowledge of the insurance industry and knew his IME would likely result in the denial of the claim. *Id.* at 37, ¶ 11. This was coupled with evidence that the physician was prejudiced against his patients and viewed those who appeared for an IME with suspicion. *Id.* But even these facts "pertain[ed] only to [the physician's] own actions" and did not suggest the defendant knowingly aided another tortfeasor. *Id.* We noted that even accepting each proposed statement of fact as true, "none of them suggest in any way that [the defendant] had any knowledge of [the insurer's] intent or even propensity to act in bad faith toward [the] claim." *Id.*

¶16     A motion to dismiss requires the movant to meet a higher standard than a motion for summary judgment. *Compare* Ariz. R. Civ. P. 12(b)(6), *Fid. Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998) (requiring the defendant to demonstrate that plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof") *with* Ariz. R. Civ. P. 56(a) (requiring the movant to demonstrate that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law). Our dissenting colleague emphasizes this point. This distinction, however, is immaterial here: *Federico* stands for the proposition that even assuming facts that might suggest bias *by the reporter*

does not suffice to prove knowledge of a scheme conducted *by the insurer*. If these facts would be inadequate to demonstrate knowledge on a motion for summary judgment, they are inadequate as allegations to withstand a motion to dismiss.

¶17 Here, as in *Federico*, none of the allegations suggest AKE knew its report would facilitate a breach of Brotherhood's duty to the Church. Falling short of even the plaintiff's allegation in *Federico*, the Church's allegation of bias is conclusory: no supporting allegations are made to show AKE had any biased or outcome-oriented intent in preparing its report. Indeed, no well-pled allegation suggests that AKE knew Brotherhood would rely on the report to a tortious end, instead of the ordinary reliance an insurer places on such a report. Assuming arguendo the report was wrong, no further allegations permit us to infer knowledge of Brotherhood's tortious conduct by AKE. Indeed, as in *Federico*, none of the allegations suggest AKE knew Brotherhood's intended conduct after the report was provided. Nor is there anything other than a conclusory allegation of "general awareness" of a purported fraudulent scheme by Brotherhood. *See Dawson*, 216 Ariz. at 102, ¶ 50. While general awareness is the standard, the bare pleading of the standard is not sufficient, even in Arizona. *Cullen*, 218 Ariz. at 419, ¶ 7. The dissent's elaboration of the pleadings at *infra* ¶ 35, in our view, does not get the Church any closer.

¶18 While we will not go point by point through the dissent's review of the complaint, we note that the final allegation—that of spoliation—is at least in part contradicted by the emails offered as an attachment to the Church's Rule 59 motion. AKE admitted it does not *electronically* preserve emails but represented that it prints emails containing information that "need[s] to [be] retain[ed]" and keeps them in a case file.

¶19 Further, as the superior court noted, AKE considered the Church's evidence—specifically, the Church's attached report and letter to its amended complaint indicating AKE disagreed with its interpretation of the data. This evidence does not support the Church's otherwise conclusory allegations of bias or outcome-oriented reporting nor an inference that AKE knew Brotherhood's conduct constituted a breach of duty.

¶20 As the superior court aptly summarized:

> The fact that AKE generally works with insurance carriers is
> not a factual contention supporting the claim that AKE was

> aware of a strategy by Brotherhood Mutual to act in bad faith on this claim . . . . There are no facts supporting a suggestion that AKE had some form of "extraordinary motivation."

With no allegations from which the court could infer knowledge, the second element of aiding and abetting was not properly pled, and the court properly granted AKE's motion to dismiss.

**¶21**      The dissent suggests we are applying a pleading standard at odds with our decision in *Verduzco v. American Valet*, and generally a standard higher than what Arizona requires. 240 Ariz. 221 (App. 2016). In *Verduzco*, we noted that "knowledge, and other condition of mind of a person may be averred generally." *Id.* at 225, ¶ 9 (quoting Ariz. R. Civ. P. 9(b)). But we did not, in *Verduzco* or anywhere else, announce a rule contrary to that expounded by our supreme court, namely that "[b]ecause Arizona courts evaluate a complaint's well-pled facts, mere conclusory statements are insufficient to state a claim upon which relief can be granted." *Cullen*, 218 Ariz. at 419, ¶ 7. We take the view that the complaint here—including the statements highlighted by the dissent—are "mere conclusory statements" that do not provide a sufficient factual basis to infer AKE had a general awareness of Brotherhood's scheme.

**¶22**      *Verduzco* is also distinguishable. In that case, we examined what was necessary to adequately plead that a defendant knew a driver was not safe to drive. The plaintiffs appropriately pled that the driver was "high on drugs and behaving erratically" and that under those circumstances the defendant "should have known" he was unable to safely drive. *Verduzco*, 240 Ariz. at 225, ¶ 10. Plaintiffs alleged a factual predicate to the defendant's *knowledge*: the driver was visibly behaving "erratically." *Id.* Further, the plaintiffs only had to prove the defendant's knowledge of the driver's condition—one level of knowledge. By contrast, the Church has not adequately pled any factual predicate to AKE's purported knowledge of a scheme, not making it "susceptible of proof." *CVS Pharmacy, Inc.*, 251 Ariz. at 576–77, ¶ 10. Further, in the instant case, it is not merely AKE's knowledge of the conditions of the roofs or other physical facts that are necessary for the aiding and abetting claim. AKE must have had *knowledge* of *Brotherhood's* breach of duty. Restatement (Second) of Torts § 876(b). For the purposes of aiding and abetting a tort of bad faith, this requires that AKE knew Brotherhood's denial was made with reckless or knowing wrongfulness. *See Federico*, 224 Ariz. at 36, ¶¶ 8-9.

**¶23**      The dissent also takes issue with our discussion of *In re Hydroxycut*. 299 F.R.D. 648. But *In re Hydroxycut* merely applies the same

elements of aiding and abetting—including the knowledge element —that Arizona has already adopted, including in *Wells Fargo*. *Compare In re Hydroxycut*, 299 F.R.D. at 657-58 (applying Restatement (Second) of Torts § 876(b)) *with Wells Fargo*, 201 Ariz. at 485, ¶¶ 33-36 (same). While this knowledge can be inferred, it cannot be based upon "inference [piled] upon inference." *Dawson*, 216 Ariz. at 103, ¶ 52. General awareness still presupposes *some* actual awareness. *Id.* at 102-103, ¶ 51 (citing *Wells Fargo*, 201 Ariz. at 487, ¶¶ 37-41). With respect to our dissenting colleague: knowledge need not be pled with specificity, but *actual* knowledge must be pled. *Id.* We do not find that the Church alleged facts susceptible to proof of AKE's scienter sufficient for an aiding and abetting claim.

**¶24**        Finally, we respectfully disagree with the dissent's statement that requiring adequate pleading for aiding and abetting shuts the courthouse door to litigants. While the superior court noted that generally "[t]he process is *first* to obtain some facts that support a claim, and *then* file litigation and conduct discovery," Arizona is not quite so harsh. Our state has procedural rules for pre-litigation discovery to allow development of those facts. *See generally* Ariz. R. Civ. P. 27. By no means is a party required to plead with the benefits of full discovery, but litigants who fear a motion to dismiss have options to guard against that result if they have already been warned that their pleading is inadequate, as was the case here. The Church could have exercised these rights before bringing the action—as well as when it was given an opportunity to file an amended complaint specifically addressing the court's concerns—as can any litigant seeking to bring an aiding and abetting claim. It is simply the case that different causes of action will require different levels of investigative effort on the part of attorneys before a case is filed. It is unexceptional that aiding and abetting in this context would be more difficult to investigate and plead than negligence.

## II.        The superior court properly awarded costs to AKE.

**¶25**        A court is required to award taxable costs to a prevailing party under Section 12-341. We affirm the judgment and the superior court's award of taxable costs.

## III.        Attorneys' Fees and Costs on Appeal

**¶26**        AKE requests attorneys' fees and costs on appeal. As the prevailing party, AKE is entitled to taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. We decline to award attorneys' fees.

**CONCLUSION**

¶27          We affirm.

**G A S S**, V.C.J., dissenting.

¶28 In granting Augsperger Komm Engineering, Inc.'s (AKE's) motion to dismiss, the superior court said, Iglesia de Jesucristo Ministerios A Los Pies del Maestro's (the Church's) "aiding and abetting claim against AKE is entirely conclusory." To that end, the superior court said, "[f]or the purposes of this motion, the key finding of [*Federico v. Maric*, 224 Ariz. 34 (App. 2010)] is that a court cannot infer knowledge of bad faith based on an allegation that a third-party's report to an insurance company was biased and submitted with the knowledge that it would negatively affect the claimant's claim." *Federico*, however, was before this court at the summary judgment stage. 224 Ariz. at 35, ¶ 1. If this case was at the summary judgment stage, I would join the majority. But this case is at the motion to dismiss stage, so the standard of review and the inferences the superior court (and we) must apply are fundamentally different. Further, the allegations in the Church's first amended complaint go further than the final evidence produced in *Federico*. I would reverse and remand for further proceedings.

¶29 The majority correctly describes the elements of the torts at issue in this case: (1) aiding and abetting and (2) insurer's bad faith denial of a claim. *See supra* ¶¶ 11–12.

¶30 For this dissent, I focus on the aiding and abetting claim. For its aiding and abetting claim against AKE, the Church must allege (1) Brotherhood breached its duty of good faith and fair dealing and caused injury to the Church; (2) AKE knew Brotherhood's conduct constituted a breach of its duties to the Church; and (3) AKE substantially assisted or encouraged Brotherhood in achieving the breach. *See Dawson v. Withycombe*, 216 Ariz. 84, 102, ¶ 50 (App. 2007) (citing *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 485, ¶¶ 33–34, 36 (2002), *as corrected* (Apr. 9, 2002)). This appeal focuses on the second and third elements.

¶31 The majority correctly states aiding and abetting does not require the Church to allege AKE had "[a]ctual and complete knowledge of the details of a primary tort." *See Dawson*, 216 Ariz. at 102, ¶ 50 (citing *Wells Fargo*, 201 Ariz. at 488, ¶ 45). Indeed, the Church need not allege AKE actually knew the conduct it allegedly aided and abetted was a tort and instead may establish a "general awareness" of the tort. *See id.*; *see also Wells Fargo*, 201 Ariz. at 488, ¶ 45 ("The knowledge requirement can be met, even though the bank may not have known of all the details of the primary fraud—the misrepresentations, omissions, and other fraudulent practices."

(quoting *Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 536 (6th Cir. 2000) (internal quotation marks omitted))). In short, Arizona requires the plaintiff allege the aiding and abetting defendant either have actual knowledge or a general awareness of the underlying tort. *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 490, ¶ 42 (App. 2008); *see also Wells Fargo*, 201 Ariz. at 488, ¶ 45 (citing with approval *FDIC v. First Interstate Bank of Des Moines, N.A.*, 885 F.2d 423 (8th Cir. 1989) for the proposition a "bank can be held liable for aiding and abetting a customer who defrauded another bank if [the] bank has a 'general awareness' of the customer's fraudulent scheme, notwithstanding the fact that the bank may not have had actual knowledge of the scheme or an intent to participate in the fraud").

¶32        I take no issue with the majority's basic statement of the law as it applies to this case. This court reviews the superior court's dismissal of a complaint under Arizona Rule of Civil Procedure (Rule) 12(b)(6) *de novo*. *Conklin v. Medtronic, Inc.*, 245 Ariz. 501, 504, ¶ 7 (2018) (citation omitted). In so doing, we may consider exhibits to the complaint. *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 9 (2012) (citation omitted). Dismissal under Rule 12(b)(6) is proper if, "as a matter of law, [Plaintiff] would not be entitled to relief under any interpretation of the facts susceptible of proof." *CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, 576–77, ¶ 10 (2021) (citation omitted). Though Arizona follows a notice pleading standard, "mere conclusory statements are insufficient to state a claim upon which relief can be granted." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 418, 419, ¶¶ 1, 7 (2008) (rejecting heightened federal pleading standard from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which requires the pleading establish a "plausible" claim for relief).

¶33        Instead, I take issue with the majority's reliance on *Federico*, which analyzed the knowledge requirement in an aiding and abetting tort at the summary judgment stage. *Federico*, 244 Ariz. at 35, ¶ 1. I would look to this court's more recent discussion of pleading knowledge at the motion to dismiss stage. *See Verduzco v. Am. Valet*, 240 Ariz. 221 (App. 2016). In *Verduzco*, this court made several key points about pleading knowledge under the Arizona Rules of Civil Procedure—points I conclude control the outcome of this appeal. *See id.* at 225, ¶¶ 9–12. In Arizona, a plaintiff need only make "[a] short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 225, ¶ 9 (quoting Ariz. R. Civ. P. 8(a)(2)). Further, "knowledge, and other conditions of a person's mind may be alleged generally." Ariz. R. Civ. P. Rule 9(b). A plaintiff need not "allege the evidentiary details of plaintiff's claim for relief." *Verduzco*, 240 Ariz. at 225, ¶ 9 (citing Daniel J. McAuliffe & Shirley J. McAuliffe, Arizona Civil Rules Handbook at 21 (2015 ed.)). As *Verduzo* recognized, "[t]he test is whether

enough is stated to entitle the pleader to relief on some theory of law *susceptible* of proof under the allegations made." *Id.* (quoting McAuliffe & McAuliffe at 144) (emphasis added).

¶34 In *Verduzco*, this court reversed a grant of dismissal of a negligent entrustment claim based on "[t]he factually intensive nature of a 'reason to know' inquiry." *Id.* at ¶ 12. General awareness, like a "reason to know," is a factually intensive question. *See id.* Under Arizona's liberal pleading standard, the Church need not "speculate" about what AKE knew to survive a motion to dismiss. *Cf. id.* (finding allegations sufficient based on the nature of the Arizona common law claim and Arizona's liberal pleading standard such that plaintiff need not speculate about actual knowledge especially "given the limited record on a motion to dismiss for failure to state a claim, which does not include disclosures, discovery or other external evidence"). Instead, the Church may demonstrate general awareness with circumstantial evidence, and this court must "indulge all reasonable inferences" from the factual allegations presented. *See Coleman*, 230 Ariz. at 356, ¶ 9; *Dawson*, 216 Ariz. at 102, ¶ 50 (holding "knowledge may be inferred from the circumstances presented"). "This is particularly true given the limited record on a motion to dismiss for failure to state a claim, which does not include disclosures, discovery or other external evidence." *Verduzco*, 240 Ariz. at 225, ¶ 12.

¶35 With the above in mind, this court's review must consider all well-pled factual allegations in the first amended complaint. I believe the majority omits some material factual allegations, and I would suggest the following *italicized* and underlined additions to paragraph 14 of the majority opinion, quoting directly from the first amended complaint:

> Here, the Church advances the following relevant allegations in its amended complaint:
>
> (1) AKE prepared a report for Brotherhood analyzing the claim of hailstone damage,
>
> (2) this report was "biased and outcome-oriented*," and "intended by AKE to lead to the denial of [the Church]'s claim or the under-estimation of the true amount owed to [the Church] by Brotherhood Mutual*,"
>
> (3) AKE knew Brotherhood would rely on the report in declining the claim, *"and from its experience working with insurance companies, AKE knew that in doing so, Brotherhood Mutual breached its duties owed to [the Church]*,"

(4) AKE had at least "a general understanding" of Brotherhood's duties given its experience in the insurance industry, *and "AKE substantially assisted Brotherhood Mutual in a tortious breach of the duties owed by Brotherhood Mutual to [the Church] under the applicable contract of insurance, and under general legal principles*,"

(5) the report was incorrect and failed to engage with contrary evidence,

(6) *"AKE, through its agents and/or employees, aided and abetted Brotherhood Mutual by failing to reasonably inspect the Property,"*

(7) *"AKE and its agents knew that the conduct of Brotherhood Mutual, including the lowball estimates of Brotherhood Mutual, and the repeated refusal to include all damages in the Loss, constituted a breach of the duties owed by Brotherhood Mutual to [the Church]; in part, this is based on the understanding that AKE routinely assists and works with insurance carriers like Brotherhood Mutual on insurance claims like the one at issue here," and*

(8) *"In an effort to destroy evidence of its knowledge of its clients' use of its reports to improperly deny and/or 'low-ball' insurance claims, such as [the Church]'s, AKE does not retain communications with its clients, such as Brotherhood Mutual. In comparison, independent insurance adjusters are required to retain all claim file records, including communications, for three years."*

¶36     The above allegations, viewed in concert, should survive a motion to dismiss. I focus on one additional allegation regarding AKE's knowledge not addressed in the majority's analysis. The Church makes this statement regarding its allegation AKE acted with the intent to lead Brotherhood to deny the Church's claim or underestimate the claim's true value. To support that proposition, the first amended complaint goes on, saying,

Some of the AC units were known to have had their condenser fins combed after the Prior Event and prior to the 2016 hailstorm [and] reflect[ed] damage that is consistent with the size of the hail stones that AKE has acknowledged were contained in the 2016 hailstorm *but AKE did not address the damages to those units or report[] that the damage to those units was from the Prior Event.*

(Emphasis added.) Admittedly, the statement would be clearer if it was in the active voice, rather than the passive voice. But for motions to dismiss, Arizona courts parse words by indulging "all reasonable inferences" from the factual allegations presented. *See Coleman*, 230 Ariz. at 356, ¶ 9; *Dawson*, 216 Ariz. at 102, ¶ 50 (holding "knowledge may be inferred from the circumstances presented"). The statement was not made in a vacuum, but in the context of AKE's alleged knowing misconduct. The reasonable inference here is the condition was known to AKE. *See id.*

¶37      With the above, the Church's first amended complaint contained well-pled factual allegations of AKE's knowledge about Brotherhood's alleged breach of its duty of good faith and fair dealing. The Church alleged AKE did not reasonably inspect the property, omitted and misattributed damages to certain units, created a biased and outcome-oriented report, intended the report to lead to an under-estimation by Brotherhood, routinely works with insurance carries and understands their duties, and failed to retain its communications with Brotherhood. At the very least, these allegations give rise to a reasonable inference AKE was generally aware Brotherhood's conduct would constitute a breach of duty. *See Coleman*, 230 Ariz. at 356, ¶ 9; *Dawson*, 216 Ariz. at 102, ¶ 50 ("knowledge may be inferred from the circumstances presented").

¶38      By comparison, this court summarized the facts in *Federico* as follows:

1.  Maric knew he was working for Liberty Mutual.

2.  Maric had done work for Liberty Mutual before.

3.  Maric knew that calling somebody a malingerer can have a negative connotation.

4.  Maric knew that opining that a claimant is motivated by secondary gains can have a negative [e]ffect on their claim.

5.  Maric knew that his IME report would adversely affect the outcome of Federico's workmans' compensation claim.

6.  Maric prejudges the patients he sees because he believes that the honest claims by legitimately injured people are settled and he never sees those people.

7. Maric believes the people he sees are seeking monetary damages far beyond what is appropriate.

8. Maric finds almost 60% of the people he sees are imagining their pain or exaggerating their pain to make money from lawsuits.

9. Maric believes that he sees a skewed population of patients.

10. Maric finds only about 3.7% of the people on whom he performs IMEs are truly injured, and that injury was caused by the incident complained of.

11. Maric believes that lawsuits drive the amount of care because that is how claimants' attorneys make more money.

12. Maric performed an inadequate medical examination of Federico.

*Federico*, 244 Ariz. at 37, ¶ 11.

**¶39**        The allegations here go further than those in *Federico* in several key regards. First, the Church alleged AKE's report was outcome oriented. No such allegation appears in the list in *Federico*. *See id.* At best, *Federico* suggests the alleged aider and abettor was biased, but did not say the report was outcome oriented. *See id.* And nothing in the list says the alleged aider and abettor "intended" the insurer's denial or under-estimation of the claim. *See id.* The first amended complaint also alleges AKE knew Brotherhood engaged in "lowball estimates" and excluded damages in violation of its duty to the Church. Nothing in *Federico* suggests a similar allegation. *See id.* And nothing in *Federico* suggests the alleged aider and abettor knowingly omitted information comparable to allegations AKE knowingly omitted damage to some units even though AKE knew the units were repaired after the event to which AKE attributed the damages. *See id.* Though those omissions may at some point constitute mere disagreement, at the pleading stage this court is not able to make that determination.

**¶40**        Moreover, the first amended complaint alleged AKE did not retain communications with Brotherhood to conceal its efforts to aid and abet Brotherhood. *Federico* contains no such allegation. *See id.* Nothing in

15

*Federico* addresses a spoliation of evidence allegation. *See id.* The majority relies on emails attached to the Church's motion to dismiss. In those emails, AKE acknowledges it did not preserve the emails, but says it prints the emails that it needs to retain for the claim file.

**¶41**  I disagree with the majority because in its analysis, it relies on those emails to draw inferences to favor AKE. But our cases direct us to draw inferences to favor the Church. And one such inference is AKE did not keep emails that would have supported the Church's position—an equally plausible inference in my opinion. In the end, it becomes a fact issue for the jury, not the superior court or this court. And to prevail on a motion to dismiss, AKE must demonstrate the Church "would not be entitled to relief under any interpretation of the facts susceptible of proof," not just one of several inference to be drawn from the alleged facts. *See Fid. Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998).

**¶42**  As Justice Rehnquist recognized, factually intensive state-of-mind inquiries are best left to factfinders, not courts acting as gatekeepers:

> The state of a [person]'s mind is as much a fact as the state of [their] digestion. It is true that it is very difficult to prove what the state of a [person]'s mind at a particular time is, but if it can be ascertained it is as much a[] fact as anything else.

*U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716–17 (1983) (quoting *Eddington v. Fitzmaurice*, 29 Ch. Div. 459, 483 (1885)).

**¶43**  Not to put too fine a point on it, but even in the context of fraud, which must be pled with specificity and which is not the claim at issue here, a plaintiff need only plead knowledge "generally." *See* Ariz. R. Civ. P. Rule 9(b). This lessened requirement exists to allow plaintiffs the opportunity to investigate, exchange disclosures, and find support (or not) for an allegation of knowledge—rather than making them speculate about what went through another's mind. *See Verduzco*, 240 Ariz. at 225, ¶ 12. To hold otherwise and require knowledge be pled with specificity, as the majority does here, would foreclose almost any aiding and abetting claim at the outset. In Arizona, we do not shut the courthouse doors so hastily. *Cf. id.* at 225, ¶¶ 9–12 ("The test is whether enough is stated to entitle the pleader to relief on some theory of law susceptible of proof under the allegations made." (Quoting Daniel J. McAuliffe & Shirley J. McAuliffe, Arizona Civil Rules Handbook at 144 (2015 ed.))).

**¶44**  Finally, I do not find persuasive the majority's citation to *In re Hydroxycut Mktg. and Sales Pracs. Litig.*, 299 F.R.D. 648, 657 (S.D. Cal. 2014).

*See supra* ¶ 13. To begin, *Hydroxycut* applied the heightened federal pleading standard, which is inimical to Arizona's relaxed pleading standard. *See id.* at 659. And though Arizona permits "general awareness" for an aiding and abetting claim, *Hydroxycut* confined its analysis to "actual knowledge." *Compare Wells Fargo*, 201 Ariz. at 488, ¶ 45 *with Hydroxycut*, 299 F.R.D. at 657. But even assuming *Hydroxycut* was relevant, it does not stand for the proposition a defendant must have "*actual knowledge* of the specific primary wrong he is substantially assisting" to be liable under the Second Restatement formulation. 299 F.R.D. at 657 (emphasis in original). Though *Hydroxycut* includes that statement, upon closer examination, the *Hydroxycut* holding does not go that far. *See id.* The *Hydroxycut* plaintiffs argued "the Retailer Defendants *need not have known* about the tortious nature of Iovate's representations to be held liable as aider and abettors." *See id.* (emphasis added). Put differently, *Hydroxycut* did not focus on the specificity of the pleadings, but rather whether the knowledge allegation needed to be pled in the first place. *See id.* Here, the Church makes no such argument. Instead, it argues the first amended complaint provides sufficient factual allegations to pass muster.

**¶45**        Because I believe the Church sufficiently pled the knowledge element, I also address the third element: whether the Church adequately pled AKE substantially assisted Brotherhood in achieving the breach. *See Dawson*, 216 Ariz. at 102, ¶ 50 (citing *Wells Fargo*, 201 Ariz. at 485, ¶ 34). "The third requirement, substantial assistance by an aider and abettor, can take many forms, but means more than 'a little aid.'" *Wells Fargo*, 201 Ariz. at 488, ¶ 46 (citations omitted). Here, the first amended complaint alleged AKE substantially assisted Brotherhood. That bare allegation, standing alone, would not survive a motion to dismiss, but the first amended complaint went further. As part of that substantial assistance, the Church alleged AKE intended its actions to "lead to the denial . . . or the under-estimation" of the Church's claim. As part of AKE's substantial assistance, the first amended complaint alleges AKE failed "to reasonably inspect the Property." And it says AKE did not address or misreported damages to some of the units knowing they had been repaired (as in having had their condenser fins combed) after the 2010 hailstorm. Taken together, the Church satisfied its pleading burden on the third element.

**¶46**        I would hold the Church adequately pled (1) Brotherhood committed a tort (breach of its duty of good faith and fair dealing); (2) AKE knew Brotherhood's conduct constituted a breach of its duties to the Church; and (3) AKE substantially assisted or encouraged Brotherhood in breaching its duty to the Church. *See Dawson*, 216 Ariz. at 102, ¶ 50 (citing *Wells Fargo*, 201 Ariz. at 485, ¶¶ 33–34, 36). Putting other weaknesses in the

first amended complaint aside, its factual allegations are sufficient to survive a motion to dismiss.

¶47          I respectfully dissent.



AMY M. WOOD • Clerk of the Court
FILED:          JT